CLERK'S OFFICE U.S. DIST COURT
AT ROANOKE, VA
FILED

FEB 27 2006

JOHN F. CORCORAN, CLERK
BY:
            DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

MARK ANTHONY TEAL, )
    Plaintiff, )
)
v. ) Civil Action No. 7:04cv00406
)
WARDEN D.A. BRAXTON, et al., )
    Defendants. ) By: Hon. Michael F. Urbanski
) United States Magistrate Judge

## REPORT AND RECOMMENDATION

Plaintiff Mark Anthony Teal, a Virginia inmate proceeding pro se, has filed a civil rights action pursuant to 42 U.S.C § 1983, with jurisdiction vested under 28 U.S.C. §1343. Plaintiff alleges that while incarcerated at Red Onion State Prison he was subjected to excessive force; denied shower, recreation, and food privileges; his personal property was confiscated; and he was subjected to retaliation for complaining about the aforesaid issues. This matter is now before the court on defendants' motion for summary judgment. Upon review of the record the undersigned finds that Teal has not presented any issue of material fact and that the defendants are entitled to judgment as a matter of law and, thus, recommends that defendants' motion for summary judgment be granted. It is further recommended that this action be found to be frivolous, as it fails to state a cause of action on which relief can be granted, and therefore, should be considered a "strike" pursuant to 28 U.S.C. § 1915(g).

I.

Teal alleges that in March 2004, Lieutenant Harrison, Sgt. Kendricks, and Sgt. Rose entered his cell to place him in restraints, but rather than just restraining him, they began to punch his face and acted as if Teal was resisting being placed in restraints. Teal claims that this assault caused the left side of his face to swell. Although unspecific, Teal also claims that in

May 2004, correctional officers again entered his cell to place him in restraints, but rather than merely restraining him, the officers punched him. However, Teal does not allege that he suffered any injury during that assault. Also without specificity, Teal alleges that on multiple occasions between February and May 2004, correctional officers generally denied him shower and recreation privileges and six meals. However, Teal has not alleged any injury as a result of the missed shower or recreational opportunities nor as a result of having missed six meals in that four month period.

In support of their motion for summary judgment, defendants have attached Teal's institutional medical record, his individual housing log from February through May 2004, and his incident and disciplinary reports. Teal's medicals records show that he made no complaints of injury or requests for medical treatment from February through May, 2004. Teal's institutional housing logs indicate that between February and May 2004, Teal participated in recreation 24 times and refused recreation approximately 40 times. Those records also show that during that same period he took 31 showers and refused to take a shower 16 times.

Teal's institutional disciplinary reports reveal that on March 24, 2004, Teal intentionally flooded his cell and began kicking his cell door. Officers ordered Teal to stop kicking the door and Teal did so; however, shortly thereafter he began kicking the door again. At that time Teal was again ordered to stop kicking his cell door and to back away from the door. However, Teal refused to comply and an extraction team was assembled to place Teal in restraints. Teal actively resisted being restrained and caused Officer Ely to sustain a cut on his left hand and forehead. Subsequently, Teal was charged and convicted of disobeying a direct order and assault on a non-inmate. Teal's medical record indicates that following his placement in restraints, a nurse checked the restraints and found that the restraints were properly applied and that Teal had

2

no injuries. Additionally, when the restraints were removed on March 25, 2004, Teal refused a medical examination.

Teal's disciplinary record also establishes that on May 20, 2004, Teal ripped apart his drinking cup and refused to return it to correctional officers. Accordingly, the officers placed him on "strip cell" and removed his property from his cell. Thereafter, Teal began to kick his cell door and refused to stop when given direct orders to do so. Subsequently, officers entered his cell and placed him in ambulatory restraints. A nurse checked the restraints and found the restraints properly applied. Further, although Teal complained of pain in his left groin area, the nurse examined him and found no redness or swelling. Teal was released from restraints on May 21, 2004, and, yet again, refused a medical exam. Moreover, Teal did not make any further complaints of injury or requests for medical attention or treatment related to that or any other injury incurred during the incident. Teal was subsequently charged and convicted on two disciplinary charges as a result of this incident: disobeying an order and intentionally destroying, altering, or damaging state or any person's property.

In response to the defendants' motion for summary judgment, Teal asserts that the defendants' video recording of Teal's placement in restraints on March 24, 2004 and May 20, 2004, supports his claims that correction officers used excessive force in subduing and restraining him. Although only one video was submitted, it shows Teal's placement in ambulatory restraints on March 24, 2004 and May 20, 2004.[1]

---

[1] By Order entered January 19, 2006, defendants were directed to submit all video recordings documenting the alleged abuse occurring between February and May, 2004. Defendants submitted such video recordings and certified to the court that Teal had been granted full opportunity to view those recordings. Teal then moved the court to consider the video as evidence in support of defendants' motion for summary judgment, and, by Order entered January 30, 2006, the court granted plaintiff's motion as to the video recording. Plaintiff has not made any challenge as to the authenticity of the video recording, accordingly the court accepts this
(continued...)

3

The March 24, 2004, video recording documents correctional officers' initial orders to Teal before entering his cell, correctional officers entering Teal's cell, Teal's placement in restraints, and the nurse's examination following his restraint. Before officers entered Teal's cell, Teal was ordered to move to the center of the cell and remove his clothing for a strip search. Although Teal's exact responses to these orders is unclear, the officers' had to repeat their orders numerous times before Teal fully complied. Teal was then ordered to back up to the tray slot so that his hands could be secured behind his back, again the order had to be repeated, but Teal finally complied. Officers then entered Teal's cell, and two officers held Teal against the cell wall while the other officers removed Teal's personal belongings. Teal was then ordered to sit on the bed and the officers began to secure the leg shackles. It is unclear exactly what happened as the officers began to remove Teal's handcuffs, so that his hands could be recuffed in front of him, as the camera's view was partially blocked by officers. However, what is apparent is that in an period of mere seconds, Teal moved from the bed, injured a correctional officer, and was subsequently placed on the floor and his limbs were manually restrained by officers.[2] Additionally, it is clear that during that period none of the officers hit Teal or used any more force than that necessary to hold Teal down while his handcuffs were resecured. Also, during that time Teal was repeatedly told to "relax" and to stop "pulling" against the officers. Once Teal was fully secured, he was placed back on the bed, and was examined by a nurse for any injuries and as to the proper application of restraints. The nurse found no injuries and Teal did

---

[1](...continued)
recording as a true copy submitted by plaintiff as evidence in support of his opposition to defendants' motion for summary judgment.

[2]During the incident Correctional Officer Ely sustained a jagged cut between his thumb and forefinger which required immediate medical attention.

4

not voice any complaints. As the nurse and correctional officers began exiting the cell, Teal began shouting "they beat me up." However, Teal had no visible signs of any injury.

The recording of the May 20, 2004 incident shows correctional officers calmly and quietly placing Teal in ambulatory restraints and the nurse's examination immediately following Teal's restraint. Officers used only a minimal amount of force in manipulating Teal's arms and legs to facilitate their placement in restraints. Further, the recording clearly shows Teal's torso and face, neither of which had any visible signs of injury. And, once the restraints were fully secured, a nurse entered Teal's cell, checked the restraints, and examined Teal for any injuries. Teal did not make any claim of injury or discomfort and the nurse noted for the record that Teal had no injuries.

## II.

Upon motion for summary judgment, the court must view the facts and the inferences to be drawn from those facts, in the light most favorable to the party opposing the motion. Ross v. Communications Satellite Corp., 759 F.2d 355 (4th Cir. 1985). Summary judgment is proper where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). However, "[t]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 47 U.S. 242 (1986).

When a motion for summary judgment is made and properly supported by affidavits, depositions, or answers to interrogatories, the adverse party may not rest on the mere allegations or denials of the adverse party's pleadings. Instead, the adverse party must respond by affidavits or otherwise and present specific facts showing that there is a genuine issue of disputed fact for

5

trial. Fed. R. Civ. P. 56(e). If the adverse party fails to show a genuine issue of material fact, summary judgment, if appropriate, may be entered against the adverse party.

### A. Excessive Force Claims

Teal claims that the defendants violated his right to be free from cruel and unusual punishment by utilizing an excessive amount of force in subduing and placing him in ambulatory restraints on March 24, 2004 and May 20, 2004.[3] Defendants concede that some amount of force was used to place Teal in restraints during the March 2004 incident. However, defendants contend that Teal refused to obey orders and that he actively resisted the officers' efforts to restrain him; accordingly, some amount of force was necessary to restrain Teal. Moreover, defendants contend that Teal suffered no injuries as a result of the force used and therefore is not entitled to any relief. Likewise, the defendants admit some force was necessary to restrain Teal on May 20, 2004, but again state that he suffered no injury as a result of the incident.

To establish an Eighth Amendment excessive force claim against a prison official, an inmate must satisfy a two-prong standard comprised of both a subjective inquiry (whether the defendant acted with a sufficiently culpable state of mind) and an objective inquiry (whether the harm plaintiff suffered was sufficiently serious enough to amount to a constitutional violation). Williams v. Benjamin, 77 F.3d 756, 761 (1996).

The subjective component of an excessive force claim requires an inmate to demonstrate that the force used by an institutional official, "inflicted unnecessary and wanton pain and suffering." Hudson v. McMillian, 503 U.S. 1, 7 (1992). In evaluating such a claim, "the

---

[3] As Teal has failed to provide specific dates of the alleged incidents, other than March 2004 and May 2004, but has not challenged the defendants records which indicate that he was placed in ambulatory restraints only on March 24, 2004 and May 20, 2004, the court will construe his complaint to allege that he was subjected to excessive force on March 24, 2004 and May 20, 2004 when officers placed him in restraints.

6

question whether the measure taken inflicted unnecessary and wanton pain and suffering ultimately turns on 'whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.'" Id. (quoting Whitley v. Albers, 475 U.S. 312, 32-21 (1986)). The Supreme Court and the Fourth Circuit have set out the following factors to consider in determining whether a prison official acted maliciously and sadistically: "the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." Hudson, 503 U.S. at 7 (1992) (quotations omitted); Williams, 77 F.3d at 762.

Also, the inmate must prove the corrections official's actions were "'objectively harmful enough' to offend 'contemporary standards of decency.'" Stanley v. Hejirika, 134 F.2d 629, 634 (4th Cir. 1998) (quoting Hudson, 503 U.S. at 8). Although there is no requirement that an inmate suffer "serious" or "significant" pain or injury to demonstrate that a malicious or sadistic use of force was employed, he must allege "more than a de minimis pain or injury." Norman v. Taylor, 25 F.3d 1259, 1263 n. 4 (4th Cir. 1994). "[A]bsent the most extraordinary circumstances, a plaintiff cannot prevail on an Eighth Amendment excessive force claim if his injury is de minimis." Taylor v. McDuffie, 155 F.3d 479, 483 (4th Cir. 1998). However, a de minimis physical injury may amount to an Eighth Amendment violation if the force used was of the sort "repugnant to the conscience of mankind." In Norman v. Taylor, the Fourth Circuit stated:

> We recognize that there may be highly unusual circumstances in which a particular application of force will cause relatively little, or perhaps no, enduring injury, but nonetheless will result in an impermissible infliction of pain. In these circumstances, we believe that either the force used will be "of a sort 'repugnant to the conscience of mankind,'" and thus expressly outside the de

7

minimis force exception, or the pain itself will be such that it can
properly be said to constitute more than de minimis injury.

25 F.3d at 1263, n. 4 (citations omitted).

### 1. March 24, 2004 Incident

According to Teal, on March 24, 2004, defendants Lieutenant S. Harrison, Sargent G. Kendricks, and Sargent M. Rose entered his cell, forced Teal to the back of the cell, acted as if they were putting Teal's hands in front of his body to be cuffed, but instead began to punch his face. Teal claims that as a result of this incident, the left side of his face became swollen. However, the defendants' evidence and the video recording of the incident present a drastically different version of the events leading to Teal's restraint. Defendants contend that before he was placed in ambulatory restraints, correctional officers discovered that Teal had intentionally flooded his cell and was kicking his door. Harrison advised Teal to stop kicking the door, and although Teal initially complied with the order, shortly thereafter he resumed kicking the door. Major Fleming was advised of Teal's behavior and Fleming ordered that Teal be placed in ambulatory restraints.

The video then shows an extraction team assembled outside of Teal's cell. Teal was ordered to move to the center of the cell and remove his clothing; however, Teal initially failed to comply with the order. Once Teal finally submitted to the strip search, he was ordered to back to the tray slot to have his hands restrained behind his back. Again, Teal initially failed to comply with the order, but eventually submitted to the restraints. Thereafter, officers entered Teal's cell, two officers held him against the wall while his belongings were removed from the cell, and he was then ordered to sit on the bed. The officers then began to fasten the ambulatory restraints on Teal's legs. As officers released Teal's handcuffs, Teal moved from the bed, injured Officer Ely, and was immediately placed on the floor and his limbs were restrained by

8

officers. Teal was neither hit nor punched during the entire incident. Furthermore, Teal was examined by a nurse immediately following his placement in restraints, and she noted that he had not been injured during the incident.

Although Teal alleges that officers punched his face and the left side became swollen following his placement in restraints, he made no requests for medical attention while restrained or after he was released. Furthermore, when he had the opportunity to discuss his injuries with the nurse while she examined him immediately after he was placed in restraints, he did not complain of any injury. Accordingly, the court finds that the injuries Teal alleges to have suffered are de minimis and do not amount to a constitutional violation.

Furthermore, even if Teal had suffered something more than de minimis injury, such injury would not have been the result of action repugnant to the conscience of mankind. To meet the subjective component of an excessive force claim, Teal must demonstrate that the force used against him was not applied in a good faith effort to restore order, but rather with malice as a punitive measure in an effort to cause him harm. See Whitley, 475 U.S. at 320-21. From the record, it is clear that Teal forced a physical confrontation between himself and correctional officers. Teal does not challenge the fact that immediately prior to this incident he intentionally flooded his cell and refused to obey orders to stop kicking his door, thus instigating his placement in ambulatory restraints. Further, the record establishes that before officers entered his cell, Teal continued to disobey direct orders. Thereafter, no significant force was used to restrain Teal until his handcuffs were released, he moved from the bed, and injured an officer. Accordingly, the court finds that at that time it was both reasonable and necessary for officers to place Teal on the floor and use some amount of force to restrain his limbs while the restraints

9

were secured. As such, the undersigned finds that Teal has failed to allege sufficient facts to satisfy the objective component of an excessive force claim.

As noted above, Teal did not suffer any serious or significant harm as a result of correctional officers entering his cell and placing him in restraints. Further, the record establishes that Teal failed to obey orders, resisted officers once those officers began restraining him, and that officers used a reasonable amount of force to restrain Teal in order to fully secure the restraints. As such the undersigned finds that Teal has not presented any question of material fact as to this claim of excessive force and that the defendants are entitled to judgment as a matter of law on this issue.

### 2. May 20, 2004 Incident

Teal also claims that on May 20, 2004, Correctional Officers Flutz, Quinn, Fowler, Fannin, and Rose entered his cell and assaulted him while placing him in restraints. However, Teal does not contest the defendants' assertion that prior to his placement in restraints he refused to obey direct orders to stop kicking his door and to stop destroying state property. Furthermore, Teal does not allege he suffered any injury as a result of the alleged assault, and the video recording of the incident shows that officers used only a minimal amount of force in manipulating Teal's limbs for placement in restraints. As Teal does not allege that he suffered any injury as a result of this incident and as the video recording of the incident establishes that officers did not use any significant amount of force in restraining Teal, the court finds that Teal has failed to establish either component of an excessive force claim. Accordingly, the undersigned finds that defendants are entitled to judgment as a matter of law as to this claim.

10

### B. Living Conditions Claims

To the extent that Teal's allegations that on multiple occasions between February and May 2004 correctional officers denied him shower and recreation privileges and denied him six meals can be construed as a living conditions claim, it fails. While the Eighth Amendment does protect prisoners from cruel and unusual living conditions, an inmate is not entitled to relief simply because of exposure to uncomfortable, restrictive, or inconvenient conditions of confinement, for, "[t]o the extent that such conditions are restrictive or even harsh, they are part of the penalty that criminal offenders pay for their offenses against society." Rhodes v. Chapman, 452 U.S. 337, 347 (1981). As a result, in order to state a claim of constitutional significance regarding prison conditions, Teal must show he sustained a serious or significant mental or physical injury as a result of the challenged conditions or that the conditions have created an unreasonable risk of serious damage to his future health. Strickler v. Waters, 989 F.2d 1375, 1380-1381 (4th Cir. 1993); Helling v. McKinney, 509 U.S. 25 (1993).

Generally, complete deprivation of out-of-cell recreation opportunities for an extended period of time violates the Eighth Amendment; however, there are exceptions to this rule. Mitchell v. Rice, 954 F.2d 187, 190 (4th Cir. 1992); Sweet v. South Carolina Dep't of Corrections, 529 F.2d 854, 865-66 (4th Cir. 1975)(finding that weekly restrictions on exercise opportunities constitutes cruel and unusual punishment if it is harmful to an inmate's health). However, the length of time an inmate is deprived of exercise is an essential component to this claim. Mitchell, 954 F.2d at 190. Here, Teal claims that between February and May 2004, he was only permitted to participate in out-of-cell recreation five times and that as a result he became constipated, had headaches, was depressed, and had a bleeding ulcer. However, Teal's institutional records establish that during that four month period, Teal participated in recreation

11

24 times, was offered and refused out-of-cell recreation approximately 40 times, and was denied recreation 6 times because he was in restraints, on strip cell status, or lock down. Teal has not made any allegation which contradicts or attempts to refute the institutional records establishing that Teal participated in out-of-cell recreation at least 24 times between February and May 2004, thus, it is clear that Teal was not completely deprived out-of-cell exercise opportunities during that four month span. Further, Teal does not contest that he was denied recreation six additional times during those months per institutional policy. However, Teal does claim that he never refused any opportunities to participate in recreation.[4] Thus, the court construes Teal's claim to allege that he was denied recreational opportunities 40 times in a four month span.

Even assuming that limited exercise opportunities over a four month span is sufficient to state a claim under the Eighth Amendment[5], Teal has failed to establish that the denial of out-of-cell exercise caused him any detriment. Although Teal claims lack of exercise caused him to suffer from headaches, depression, constipation, and a bleeding ulcer, Teal has not provided any evidence which suggests that he complained of any illness or requested medical care or treatment during that four month period for these or any other symptoms. Furthermore, Teal's medical records reflect that he did not make any complaints to medical personnel and was not examined by medical staff, other than to check that ambulatory restraints had been properly

---

[4]Teal made a blanket assertion in his motion for an evidentiary hearing on the defendants' motion for summary judgment that the defendants' claims that he refused to utilize shower and recreation opportunities were false.

[5] The court notes that Teal's claim can be broken down to allege that he was refused approximately 10 out-of-cell exercise opportunities each month for four months, which on its face, seems insufficient to allege a claim of such extreme or prolonged denial of exercise as to give rise to a constitutional violation. See Pearson v. Ramos, 237 F.3d 881, 884 (7th Cir. 2001)(upholding a 90 day threshold of complete denial of exercise privileges before a violation of the cruel and unusual punishment clause arises) and Phillips v. Norris, 320 F.3d 844, 848 (8th Cir. 2003)(finding that complete deprivation of out-of-cell exercise opportunities for 37 days does not present an Eighth Amendment violation).

12

applied during that period. Therefore, the court finds that Teal has failed to establish that the defendants' alleged failure to provide him with adequate exercise opportunities posed a serious threat and, thus, finds that defendants are entitled to judgment as a matter of law on this claim. See Hall v. Williams, 51 F.3d 266 (4th Cir. 1995)(finding that absent any evidence of injury, complete deprivation of exercise for four and one half months failed to state a claim).

Likewise, Teal claims that correctional officers limited his showering opportunities between February and May of 2004. However, the institutional records indicate that Teal took a shower 31 times and refused to take a shower 16 times during that four month period. Again, Teal has not made allegation refuting the accuracy of the institutional records as to how many times he took a shower. Moreover, Teal has not alleged that he suffered any injury as a result of the denied showering opportunities and, thus, has failed to establish that such denials presented any threat of serious physical or mental injury. See Shakka v. Smith, 71 F.3d 162, 168 (4th Cir. 1995)(finding that inmate failed to establish sufficient risk of harm by merely being denied an opportunity to shower for a period of days).

Teal also alleges that from February to May 2004, he was denied 6 meals. While being denied 6 meals in a four month period may be inconvenient and unfortunate, Teal has not demonstrated that, because of the conditions, he has sustained a serious or significant injury or is at risk of a future injury. See White v. Gregory, 1 F.3d 267, 269 (4th Cir. 1993)(finding that allegations of insufficient food alone, absent any suggestion of deleterious effects, failed to state a claim under the Eighth Amendment).

Accordingly, as Teal has failed to establish that he in fact suffered any harm as a result of the allegedly denied showering and recreation opportunities or the six missed meals from February through May 2004, the court finds that he is unable to establish that those conditions

13

amount to a constitutional violation. See Farmer v. Brennan, 511 U.S. 825 (1994); see also, Rish v. Johnson, 131 F.2d 1092, 1096 (4th Cir. 1997). Therefore, the undersigned recommends that defendants' motion for summary judgment on this issue be granted.

### C. Personal Property Claims

Teal alleges that on May 20, 2004, correctional officers removed two orange bags containing his personal property from his cell, but only one bag was returned to him. Defendants assert that on May 20, 2004, Teal's personal property was confiscated because he was placed in a security strip cell and that once he was removed from strip cell status, his property was returned. However, the defendants do not have a detailed inventory of the property which was confiscated because once an inmate has been ordered to be placed on strip cell status, his property is bagged and removed from his cell, but is not extensively examined nor inventoried. It is placed immediately outside of the inmate's cell and in full view of the inmate and is returned to the inmate once that inmate is returned to regular status.

To the extent Teal alleges that removing his property from his cell without a pre-deprivation hearing constituted a violation of his due process rights, it fails. The due process protections afforded under the Fourteenth Amendment are not abated merely due to incarceration. Hudson v. Palmer, 468 U.S. 517, 539 (1984). Accordingly, due process generally requires that a pre-deprivation hearing be held when loss of property will result from an established state procedure. Logan v. Zimmerman Brush Co., 455 U.S. 422, 433 (1982). In this instance, Teal complains because he was not given a pre-deprivation hearing before his property was temporarily removed from his cell. However, the court must give prison officials considerable deference in determining what regulations are reasonably necessary to maintain order and safety within the institution. See Thornburgh v. Abbott, 490 U.S. 401, 404-07 (1989).

14

And, to the extent those policies infringe on an inmate's constitutional rights, so long as they are "reasonably related to a legitimate penological interest," they are valid. Turner v. Safley, 482 U.S. 78, 89 (1987). It is clear that prison administrators have a legitimate interest in maintaining safety and order within the institution. See Hodges v. Virginia, 871 F.Supp. 873, 876 (W.D.Va. 1994), rev'd on other grounds, Montcalm Publ. Corp. v. Beck, 80 F.3d 105 (4th Cir. 1996)(finding that security, discipline, order, public safety, and rehabilitation interests need no defense). Therefore, the court must defer to the reasoned and informed discretion of those officials in determining that temporarily removing an inmate's property from his cell without a pre-deprivation hearing is at times necessary. Thornburgh v. Abbott, 490 U.S. at 404-07. Here, Teal does not challenge the fact that at the time the property was removed from his cell he had refused to obey multiple direct orders, was kicking his cell door, and was breaking up his drinking cup. Accordingly, the court finds that prison officials could have reasonably determined that Teal was behaving in a disruptive and potentially dangerous manner and, therefore, ordered that his personal property be immediately and temporarily removed from his cell. Accordingly, such a deprivation would not have violated Teal's due process rights. Therefore, the undersigned finds that defendants are entitled to judgment as a matter of law on this claim.

Furthermore, to the extent Teal's claims can be construed to allege that defendants intentionally or negligently lost his property and have therefore failed to return it, it too fails. The intentional or negligent deprivation of personal property by a prison employee acting outside the scope of official policy or custom does not rise to the level of a constitutional violation, so long as the state provides an adequate post-deprivation remedy. See Hudson, 468 U.S. at 539. Given that the conduct is unauthorized, it would be impracticable for the state to

15

provide a pre-deprivation hearing or other process. Id. Therefore, an adequate post-deprivation remedy, such as a prison grievance procedure or a state tort claim, suffices. Id. The state has established Division Operating Procedures and a grievance procedure of which Teal could avail himself for relief. In this case, it is clear that Teal is aware of available post-deprivation remedies, as he has filed multiple grievances related to other matters. Furthermore, other state law remedies, including the Virginia Tort Claims Act, are available to Teal as a means to seek compensation for his alleged loss. See Wadhams v. Procunier, 772 F.2d 75 (4th Cir. 1985); Ballance v. Young, 130 F.Supp.2d 762, 767 (W.D. Va. 2000). Accordingly, inasmuch as Teal had adequate state remedies, the undersigned finds that he has failed to state a cognizable constitutional claim and that the defendants are entitled to judgment as a matter of law as to this claim as well.

### D. Retaliation

Teal alleges that in retaliation for his attempts to pursue his claims in court the defendants have blocked and/or refused to process his grievances, taunted him, and have generally abused him as noted in Teal's claims detailed above. In order to state a claim of retaliation, Teal must establish that the defendants' actions actually had an adverse impact on a protected right. Crawford-El v. Britton, 523 U.S. 574, 589 (1998).

Teal has not alleged how blocking or failing to process his grievances and taunts impacted any of his protected rights. However, even if broadly construed to allege that defendants have done so in an attempt to deny him access to the courts, the claim lacks merit. Teal has not alleged that the defendants' actions prevented him from filing a civil action, caused him to miss any court imposed deadlines, or resulted in him being unable to fully respond to any matter before the court. Moreover, Teal's numerous filings in this matter show that Teal's

efforts to communicate with the courts have not been hindered by the defendants' actions. As such, Teal has failed to demonstrate any actual injury or specific harm resulting from any action on the part of the defendants relating to his protected rights. Therefore, the undersigned finds that defendants are entitled to judgment as a matter of law on this issue.

### IV.

Under 28 U.S.C. § 1915A(b)(1), the court may dismiss a complaint as frivolous or malicious if the court finds the complaint is based on indisputably meritless legal theories or claims whose factual contentions are clearly baseless. Nasim v. Warden, Maryland House of Corrections, 64 F.3d 951, 955 (4th Cir. 1995). As described above, the record reflects that plaintiff's claims are without legal merit. Teal's factual allegations are nothing more than exaggerated claims related to the defendants' reasonable and expected response to situations Teal created. Thus, there exists no factual basis for his claims. Accordingly, it is recommended that this action be dismissed as frivolous pursuant to 28 U.S.C.§ 1915A(b)(1) and this action be deemed a "strike" under 28 U.S.C. § 1915(g).

### V.

For the reason stated above, the court finds that the plaintiff has failed to present any issue of material fact and that the defendants are entitled to judgment as a matter. Accordingly, it is recommended that the defendant's motion for summary judgment be granted. It is further recommended that this action be dismissed as frivolous, as it fails to state a cause of action on which relief can be granted, and therefore, that dismissal should be considered a "strike" pursuant to 28 U.S.C. § 1915(g).

17
Case 7:04-cv-00406-SGW-mfu Document 85 Filed 02/27/06 Page 17 of 18 Pageid#: 493

The clerk is directed to immediately transmit the record in this case to the Honorable Samuel G. Wilson, United States District Judge. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note objections, if they have any, to this Report and Recommendation within ten (10) days hereof. Any adjudication of fact or conclusions of law rendered herein by the undesigned not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C § 636(b)(1) as to factual recitations or findings as well as to the conclusions reached by the undersigned may be construed by the reviewing court as a waiver of such objection.

Further, the Clerk is directed to send a certified copy of this Report and Recommendation to all counsel of record.

Entered this 24th day of February, 2006.

Michael F. Urbanski
United States Magistrate Judge